(C.D. 2488)

MEREDITH GALLERIES *v.* UNITED STATES

United States Customs Court, Second Division

(Decided October 27, 1964)

*Barnes, Richardson & Colburn* (*E. Thomas Honey* of counsel) for the petitioner.
*John W. Douglas*, Assistant Attorney General (*Daniel I. Auster* and *Morris Braverman*, trial attorneys), for the respondent.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: This is a proceeding by which the petitioner seeks the remission of additional duties imposed on certain merchandise by virtue of section 489 of the Tariff Act of 1930, which provision was in effect at the time of the instant importation but has since been repealed (88 Treas. Dec. 186, T.D. 53318).

The shipment involved is shown by the consumption entry to consist of 17 cases of decorated porcelainware (figurines). Said entry bearing the signature—

Meredith Galleries
Per Harry Solodow, Atty.

indicates the nominal and actual consignee of the merchandise to be "Meredith Galleries" of 14 East 52nd Street, New York City.

The provision of law by which the additional duties were imposed and by virtue of which under certain stated conditions said duties may be remitted reads, so far as pertinent here, as follows:

If the final appraised value of any article of imported merchandise which is subject to an ad valorem rate of duty or to a duty based upon or regulated in any manner by the value thereof shall exceed the entered value, there shall be levied, collected, and paid, in addition to the duties imposed by law on such merchandise, an additional duty of 1 per centum of the total final appraised value thereof for each 1 per centum that such final appraised value exceeds the value declared in the entry. Such additional duty shall apply only to the particular article or articles in each invoice that are so advanced in value upon final appraisement and shall not be imposed upon any article upon which the amount of duty imposed by law on account of the final appraised value does not exceed the amount of duty that would be imposed if the final appraised value did not exceed the entered value, and shall be limited to 75 per centum of the final appraised value of such article or articles. Such additional duties shall not be construed to be penal and shall not be remitted nor payment thereof in any way avoided, except in the case of a clerical error, upon the order of the Secretary of the Treasury, or in any case upon the finding of the United States Customs Court, upon a petition filed at any time after final appraisement and before the

expiration of sixty days after liquidation and supported by satisfactory evidence under such rules as the court may prescribe, that the entry of the merchandise at a less value than that returned upon final appraisement was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise. * * *

Upon the making of such order or finding, the additional duties shall be remitted or refunded, wholly or in part, and the entry shall be liquidated or reliquidated accordingly. Such additional duties shall not be refunded in case of exportation of the merchandise, nor shall they be subject to the benefit of drawback. All additional duties, penalties, or forfeitures applicable to merchandise entered in connection with a certified invoice shall be alike applicable to merchandise entered in connection with a seller's or shipper's invoice or statement in the form of an invoice.

Four witnesses were called to testify during the course of the instant proceeding, three appearing on behalf of petitioner and one for the respondent. From their testimony the following facts appear.

David Solon, manager of Meredith Galleries, importer of antiques and reproductions, petitioner herein, accompanied a business acquaintance, Max Robbins, to Frankfort, Germany, for the purpose of buying porcelainware or chinaware. It was Solon's first trip to Germany. Robbins took him to Radon's in Frankfort where they examined certain merchandise displayed for sale, particularly Dresden china. Due to the damaged condition of some of the merchandise, David Solon did not wish to rely on his own judgment and telephoned his brother Stanley in New York, owner of the Meredith Galleries. As a result, Stanley Solon went to Frankfort and in the company of his brother, David, proceeded to Radon's to inspect the merchandise and decide on its purchase. In the interim, the merchandise had been packed and the owner refused to display it. Thereupon Stanley Solon decided not to purchase any of the material and so informed Max Robbins of his decision. Stanley Solon advised Robbins that if the latter decided to purchase the merchandise that Meredith Galleries would be willing to auction it.

The Solons did not know the subsequent developments of the transaction between Robbins and Radon's until the merchandise arrived in this country and they were notified that the importation had been entered in their name.

When the merchandise was delivered to the Meredith Galleries, the cases were opened and it was discovered that many of the broken items they had seen in Frankfort had been included in the shipment. Part of the merchandise was auctioned off by Meredith Galleries and the unsold balance was sent to Max Robbins at the Avalon Galleries, New York City, where he had an office.

Corroborative of the facts brought out by the foregoing testimony is a letter from David Solon on the stationery of Meredith Galleries addressed to the Collector of Customs, New York 4, New York, which

was received in evidence as petitioner's collective exhibit 2. As petitioner's collective exhibit 3, there was received in evidence photostatic copies of statements of items sold by Meredith Galleries for the account of Max Robbins, less a selling commission.

David Solon on two occasions had conferred with Customs Examiner Gross (since deceased) at New York and had brought to the examiner's attention the fact that Meredith Galleries was not the owner of the instant merchandise.

Stanley Solon was also called to testify. His testimony was, to a great extent, corroboratory of the testimony of his brother, David, regarding the transaction. Stanley Solon stated they did not at any time purchase any merchandise in Germany and that he did not enter into any partnership or other agreement with Max Robbins concerning the instant merchandise. He stated further that he did not at any time put up any money for the purchase of the merchandise before the court and that he did not furnish letters of credit. He stated, moreover, that he did not agree to let Max Robbins ship the merchandise to him to have the merchandise entered in the name of Meredith Galleries but merely offered to auction off the merchandise if Robbins should decide to purchase it.

Prior to the present importation, Meredith Galleries had other importations, in connection with which Stanley Solon stated he had become acquainted with Leo Robbins, a freight forwarder, and with Freedman and Slater, customs broker. Although not definite in his recollection, Stanley Solon was of the opinion that it was Leo Robbins who presented to him for signature a power of attorney executed in favor of Harry Solodow, customs broker, and who he believed was associated with Freedman and Slater with whom he had previously done business. In fact, however, Harry Solodow was associated with Trans-World Shipping Corp., customs broker.

Harry Solodow was subsequently called to testify, during the course of which he stated that at the time of entry of the instant merchandise he had no personal contact with either David or Stanley Solon of the Meredith Galleries. When Solodow became associated with the Trans-World Shipping Corp., one of the accounts he brought to that firm was the Robbins Forwarding Co. He explained that, while Meredith Galleries was one of the customers of Robbins Forwarding Co., he dealt with Robbins Forwarding in connection with the instant importation and not with either of the Solon brothers.

The power of attorney executed by Meredith Galleries in Solodow's favor was obtained through the intervention of Leo Robbins of Robbins Forwarding Co.

Solodow explained that at the time of importation a submission sheet supplied by him to the customs examiner was returned indicat-

ing what the entered value should be and entry was made by him accordingly. In fact, he added a 3 percent tax to the customs examiner's figures inasmuch as such a tax was at that time being included for other shipments for other importers from Holland.

Petitioner's exhibit 8–A, the bill of lading covering the instant importation, received in evidence for the limited purpose of showing who the consignee was in the United States, discloses the name of William H. Muller Shipping Corp., Broad Street, New York, N. Y. Solodow testified that he made entry of the merchandise in the name of Meredith Galleries and filed a bond in their name but that he did not contact them. The invoice used on entry had typed thereon by the Trans-World Shipping Corp.—

"Wm. H. Muller & Co.
Amsterdam, Holland
Consigned to
Meredith Galleries, 14 East 52nd Street, NYC."

Harold E. Shea, Assistant Deputy Collector, Monies and Accounts Division, port of New York, was called to testify as respondent's only witness. We do not consider that the brief testimony which he was called upon to give aids in any way in resolving the sole question before the court as to the good or bad faith of the petitioner in entering the instant merchandise.

Of several cases cited by respondent in its brief the greatest reliance seems to be placed on the case of *United States* v. *Waterbury Lock & Specialty Co.*, 35 CCPA 131, C.A.D. 384. In the *Waterbury* case the court held that a person may not justly maintain that he is not the importer of merchandise consigned to him without his authority when he receives such merchandise and causes it to be entered and introduced into the commerce of the United States.

In our opinion, the *Waterbury* case is distinguishable from the instant proceeding which involves a petition for remission of additional duties. Here, the question is not whether Meredith Galleries, petitioner, by its actions or omissions to act has acquired the status of consignee of the merchandise involved, but whether in the entry of said merchandise the Meredith Galleries endeavored to defraud or deceive the United States as to the value of said merchandise.

Counsel for petitioner relies on the case of *Clark Blade & Razor Co.* v. *United States*, 58 Treas. Dec. 45, T.D. 44142, involving a remission proceeding pursuant to the analogous provision of section 489 of the Tariff Act of 1922. A petition was filed in that case for remission of additional duties because of an advance made by the appraiser on the value of a machine imported from Germany. The Clark Blade & Razor Co., petitioner, had contracted to purchase the machine. The sellers forwarded the invoice and bill of lading to Interocean For-

warding Co., a customs brokerage firm, the bill of lading designating the said forwarding company as the consignee of the merchandise. Neither the bill of lading nor the invoice was submitted by Interocean to the Clark Blade & Razor Co. However, the brokerage firm obtained the signature of the president of Clark Blade on a blank customs declaration which was thereupon endorsed and filed in conjunction with the entry, with the result that the customs brokerage firm was relieved of a liability that might accrue as to customs duties.

The court in the *Clark Blade* case concluded that the petitioner should be relieved from the payment of the additional duties. In arriving at its conclusion, the court stated—

It is to be noted that the provision of law just quoted does not deal with individuals having to do with either the making of the invoice or the entry, and so, therefore, the question to be determined in this proceeding is whether or not the entry of the involved machine at less than the value returned upon final appraisement "was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise."

So far as this proceeding is concerned the question of whether the Interocean Forwarding Co. was or was not responsible for, or had knowledge of, the undervaluation upon entry and was therefore liable for the additional duties, was eliminated by its securing and filing with the entry the purchaser's declaration of ownership and thereby absolving itself from such liability. It only remains to determine whether, notwithstanding that entry was made on a false and fraudulent invoice, the ultimate consignees, the Clark Blade & Razor Co., may be held in any way responsible for so much of the fraud as was embodied in the entry. We think not.

From all the evidence before us the conclusion is fully warranted that no officer of that company, or other person connected therewith, having to do with the purchase or entry of the machine in question, was a party to or had any knowledge of the false statement of value in the invoice or entry.

Notwithstanding that in section 489, *supra*, it is provided that "Such additional duties shall not be construed to be penal," they accrue only as the result of a finding by the United States appraiser that merchandise was undervalued on entry, and therefore their imposition is in the nature of punishment for such undervaluation; but inasmuch as provision is made for remission of such duties on the presentation to this court of satisfactory evidence that entry at less than the final appraised value was not made with fraudulent intent, it must be that it was not the intent of Congress that under circumstances such as attended the entry of this machine a purchaser and ultimate consignee that had no part in the making of such entry should become liable for the payment of additional duties. If such were the case, great hardship would result to innocent importers under the liberal practices that prevail for the making of customs entries.

Whereas the testimonial record before the court in the instant case is voluminous, it nevertheless is enshrouded with a degree of vagueness. However, after careful consideration of the record, we think the situation is well expressed in a statement contained in respondent's exhibit G, a report of a customs agent to the collector of customs at

New York, prepared as a result of the agent's investigation of the importation in issue, wherein he states—

\* \* \* Therefore, it appears Meredith Galleries is technically liable for the payment of additional duties unless the court grants relief on the grounds that it has not been clearly established that the importer wilfully undervalued the merchandise or for that matter knew that it was undervalued.

We are of the opinion that the weight of evidence presently before the court supports an affirmative finding that entry of the instant merchandise at a less value than that returned upon final appraisement was without any intention on the part of Meredith Galleries, petitioner herein, to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise.

The court, accordingly, holds that the petition for remission of additional duties should be granted.

Judgment will be issued accordingly.